**The below described is SIGNED.**

**Dated: January 9, 2014**





**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**SOLDIER SUMMIT RECREATION & DEVELOPMENT CO., L.L.C.,**<br><br>Debtor. | Case No. 02-29452<br><br>Chapter 11 |

## MEMORANDUM DECISION

Unhappy with their returns from a plan they proposed, creditors Grovesner Bolles, David Cunningham, and Scamp Excavations, Inc. (Creditors) filed a motion to reopen this chapter 11 case and reinstate the bankruptcy stay to conduct an emergency lot sale of property owned by Soldier Summit Recreation & Development Co., L.L.C., the Reorganized Debtor, and to file an adversary complaint against Robert Barrus, Timberland Development, L.C., and Soldier Summit Estates, L.C. (Summit Estates) seeking contempt and damages. Specifically, the Creditors assert that Barrus, Timberland, and Soldier Summit have mismanaged the Reorganized Debtor and

1

failed to follow the provisions of the Plan. The motion is opposed by Barrus and opposed in part by Dr. Jau-Fei Chen.

For the reasons set forth herein based on the Court's review of the papers, evidence, arguments, and applicable case law, the Court denies the motion.[1]

## I. FACTS

The Creditors filed an involuntary chapter 11 bankruptcy petition against Soldier Summit Recreation & Development Co., L.L.C. on June 7, 2002. More than two years later, after substantial proceedings and negotiations, the Creditors—along with Mez Stewart Construction & Design, Inc. and Tuttle Engineers, P.C. —proposed a plan of reorganization (Plan or Confirmed Plan) for the Bankruptcy Court to consider. Following a contested confirmation hearing, the Court confirmed the Plan in an order entered on February 18, 2005. On February 1, 2007, upon motion of the Plan's proponents, the Court closed the bankruptcy case.[2]

Among other things, the Plan transferred all ownership interest in the Debtor and Reorganized Debtor to Summit Estates. In turn, membership in Summit Estates consisted of Timberland and Mountain Development Co., LLC. Timberland is owned and operated by Barrus, and Mountain Development is owned and operated by the Creditors and the other original proponents of the Plan.

The Plan creates 12 classes of claims, with the Creditors' unsecured claims included in Class 6. According to the Plan, the Creditors were to be paid "[f]ifty percent of the net proceeds of the sale of lots (after payment of other expenses, taxes, and claims) . . . until such time as the

---

[1] These Findings of Fact and Conclusions of Law constitute the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052 and 9014. Any of the findings of fact herein are also deemed to be conclusions of law and conclusions of law herein are also deemed to be findings of fact and shall be equally binding as both.

[2] Two developments in the business world illustrate the age of this case. On February 15, 2005, after the Plan was confirmed, YouTube, the now ubiquitous website on which videos may be shared with others, was launched. And just one month before this case was closed, then Apple CEO Steve Jobs unveiled a new touchscreen phone. Since its launch the following June, Apple has sold over 250 million iPhones.

Unsecured Claims of the Proponent Creditors are paid in full."[3]  The Creditors assert that they have not been paid in accordance with the Plan.

Included in the Plan are provisions relating to default and retention of jurisdiction by the Bankruptcy Court. Section 9.2 of the Plan provides that "[i]f any event of default occurs and continues for a period of 20 days after receipt by the Reorganized Debtor of written notice of such default from any claim holder or any other party of interest, such claim holder or other party of interest shall have the right, without the necessity of recourse to the Court, demand or other notice, to exercise all legal and equitable rights and remedies it may have under state or federal law."[4]

The Plan also provides for the Court to maintain jurisdiction subsequent to confirmation for "[h]earing and determining all causes of action, controversies, disputes, or conflicts between the Reorganized Debtor and any other party"[5] and for "[h]earing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties in interest with respect thereto."[6]

## II. DISCUSSION

Section 350(b) of the Bankruptcy Code provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." A motion to reopen presents a narrow range of issues, and should only be granted when the moving party demonstrates a compelling reason to do so.[7] "The longer the time between the closing of the estate and the motion to reopen, the more compelling the reason for

---

[3] Plan § 6.6.
[4] Plan § 9.2.
[5] Plan § 15.1.5.
[6] Plan § 15.1.10.
[7] *In re Menk*, 241 B.R. 896, 916 (9th Cir. BAP 1999); *In re Owsley*, 494 B.R. 321, 325 (Bankr. E.D. Tenn. 2013).

reopening the estate should be."[8] Regardless of the reason, "the decision to reopen a case is committed to the 'sound discretion' of the bankruptcy court."[9]

Bankruptcy courts consider a number of factors in deciding whether or not to reopen a closed case. Included in those factors are: (1) the length of time that the case was closed; (2) the nature of the parties' dispute; (3) whether a non-bankruptcy forum has the ability to determine the issues submitted for consideration; and (4) whether any parties would be prejudiced if the case were or were not reopened.[10]

Most important to the Court's decision not to reopen the case is the fact that it was closed nearly seven years ago. The Creditors do not seek to administer assets or accord relief to the debtor, so their motion must establish "other cause" to reopen the case under § 350(b). The reasons presented in the motion fail to convince the Court that the case should be reopened after a seven-year lapse of time.

The Creditors seek to reopen the case to bring contempt and damages claims against Barrus, Timberland, and Summit Estates for mismanagement of the Reorganized Debtor. They also seek to reinstate the stay to prevent the foreclosure sale of certain assets in favor of other Plan creditors. In their motion for order of contempt, the Creditors allege that Barrus, as manager and majority owner of Summit Estates, failed to pay classes of claims according to the Plan, wrongly allocated profits from the sales of assets of the Reorganized Debtor, and engaged in improper self-dealing.

---

[8] *Owsley*, 494 B.R. at 325 (quoting *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835 (8th Cir. BAP 2010)); *see also In re Apex Oil Company*, 406 F.3d 538, 543 (8th Cir. 2005).

[9] *In re Coastline Care, Inc.*, 299 B.R. 373, 377 (Bankr. E.D.N.C. 2003) (quoting *In re Thompson*, 16 F.3d 576, 581 (4th Cir. 1984); *see also Apex Oil*, 406 F.3d at 542; *In re Petroleum Production Management, Inc.*, 282 B.R. 9, 13 (10th Cir. BAP 2002).

[10] *In re Frazier/Exton Development, L.P.*, No. 11-14041, 2013 WL 5416269, at 11* (Bankr. E.D. Penn. 2013) (summarizing the factors considered); *see also Paul v. Monts*, 906 F.2d 1468, 1475-76 (10th Cir. 1990) (considering the nature of the claims and the availability of state courts to resolve them); *Apex Oil*, 406 F.3d at 542-43 (approving the bankruptcy court's consideration of multiple factors); *In re Nylon Net Company*, 225 B.R. 404, 405-06 (Bankr. W.D. Tenn. 1998) (considering the claims, alternative forums, and length of time the case was closed).

4

While it is true that "a confirmed plan functions as a judgment with regard to those bound by the plan,"[11] and a contempt action may sometimes be appropriate, it is also true that "a state law breach of contract action may be brought for a breach of chapter 11 plan obligations."[12] The causes of action presented in the motion for contempt are essentially breach of contract claims and can be appropriately decided by a state court of general jurisdiction.[13]

The Creditors hang their hat on the default and retention of jurisdiction language included in the Confirmed Plan. However, as Barrus points out in his opposition to the motion, the default language provides that a party in interest "shall have the right, without the necessity of recourse to the Court, demand or other notice, to exercise all legal and equitable rights and remedies it may have under state or federal law."[14] Thus, the default language contemplates that parties in interest do not need to return to this Court in the event of post-bankruptcy default.

In addition, the retention language is boiler-plate included in many chapter 11 plans. Such language is generally intended to retain the bankruptcy court's jurisdiction for the time between confirmation of a plan and the substantial consummation and closure of a chapter 11 case, or for other specifically contemplated claims or causes of action. The language is not meant to "keep the corporation in perpetual tutelage by . . . assuming jurisdiction over controversies between the reorganized corporation and third parties."[15] Simply put, the language in the Plan "does not mandate that this Court exercise subject matter jurisdiction when concurrent jurisdiction exists in a state court."[16]

---

[11] *Monts*, 906 F.2d at 1471, n.3.
[12] *Nylon Net*, 225 B.R. at 406. A breach of contract action is often more appropriate because a chapter 11 plan is a "binding contract between the debtor and its creditors." *Id.*
[13] *Monts*, 906 F.2d at 1471, n.3.
[14] Plan § 15.1.5.
[15] *In re Tri-L Corp.*, 65 B.R. 774, 778 (Bankr. D. Utah 1986) ("[T]he ultimate purpose of reorganization is to let the corporation go forward under its own power in the usual ways of business without judicial restraint or interference.") (quoting *Claybrook Drilling Company v. Divanco*, 336 F.2d 697, 700-01 (10th Cir. 1964)).
[16] *Nylon Net*, 225 B.R. at 406.

Finally, no party will be prejudiced by the Court's refusal to reopen the bankruptcy case. The Creditors are free to assert their underlying claims in state court, and the bankruptcy estate is equally unaffected because there is no longer an estate to be administered.[17]

### III. CONCLUSION

A chapter 11 bankruptcy is meant to relieve, reorganize, and rehabilitate the debtor and send it on its way. Quite contrary to the parable of the prodigal son, the bankruptcy court is not a welcoming father, embracing parties who return years later when they find themselves in trouble. Instead, the Court's post-confirmation jurisdiction is necessarily limited. Considering the length of time that has passed, the contractual nature of the disputes, and the lack of prejudice to parties in interest, this Court considers a state court of general jurisdiction to be the more appropriate forum for the Creditors to seek relief. For the reasons set forth above, the Creditors' motion is denied. The Court will issue a separate order denying the motion.

---

[17] "[T]he confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). In this case, the Plan removed the property of the estate one step further by transferring all the assets of the Reorganized Debtor to an entirely new entity.

----------------------------------------------- END OF DOCUMENT ----------------------------------------

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

**Patrick J. Ascione**
Ascione & Associates, LLC
4692 North 300 West, STE 220
Provo, UT 84604

**Dustin A. Hardy**
Ascione & Associates, LLC
4692 North 300 West, STE 220
Provo, UT 84604

**David L. Pinkston**
Snow, Christensen & Martineau
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, UT 84145

**David J. Crapo**
Crapo Smith
1706 South 500 West, Suite 250
Bountiful, UT 84010

**John T. Morgan tr**
US Trustees Office
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111

**Mona Lyman Burton**
Holland & Hart
222 S. Main Street, Suite 2000
Salt Lake City, UT 84101

**William H. Christensen**
Larsen Christensen & Rico, PLLC
50 West Broadway, Suite 400
Salt Lake City, UT 84101

**Nathan S. Dorius**
Pia Anderson Dorius Reynard Moss
222 S. Main Street, Suite 1830
Salt Lake City, UT 84101

**Robert Fugal**
Bird & Fugal
384 East 720 South, Suite 201
Orem, UT 84058

**Thomas J. Scribner**
Scribner Fowlke
2696 North University Ave., Suite 220
Provo, UT 84604

**Zachary T. Shields**
Callister Nebeker & McCullough
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, UT 84133

**David W. Sorensen**
U.S. Attorney's Office
150 Social Hall Avenue, Suite 313A
Salt Lake City, UT 84111

**Roger G. Segal tr**
Cohne Rappaport & Segal
257 East 200 South, Suite 700
P.O. Box 11008
Salt Lake City, UT 84147

**Daniel J. Torkelson**
Cohne Rappaport & Segal
257 East 200 South, Suite 700
P.O. Box 11008
Salt Lake City, UT 84147

**Kent O. Willis**
476 South 560 East
Orem, UT 84097

**Douglas L. Neeley**
320 South 50 West 101-6
Ephraim, UT 84627

**Soldier Summit Recreation & Development Co., L.L.C.**

145 West Cascade Avenue

Alpine, UT 84004